## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **SHOVON WOODARD,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:18-cv-1523** |
| **v.** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **KEVIN JOHN O'BRIEN,** | : | |
| | : | **Magistrate Judge Vascura** |
| **and** | : | |
| | : | |
| **KEVIN O'BRIEN & ASSOCIATES** | : | |
| **CO., L.P.A.** | : | |
| | : | |
| **Defendants.** | | |

## OPINION & ORDER

This matter is before the Court on multiple motions. Plaintiff Shovon Woodard brought a Motion for Partial Summary Judgment. (ECF No. 20). Defendants Kevin John O' Brien and Kevin O'Brien & Associates Co. L.P.A. opposed the motion. (ECF No. 28). In addition, there are competing motions to strike various affidavits and other filings submitted in connection with the outstanding Motion for Partial Summary Judgment. (ECF Nos. 34, 37). For the reasons set forth below, the Court: (1) **GRANTS** Plaintiff's Motion for Partial Summary Judgment (ECF No. 20); (2) **GRANTS** Plaintiff's Motion to Strike (ECF No. 37); (3) **GRANTS in part** and **DENIES in part** Defendants' Motion to Strike (ECF No. 34).

### I.      BACKGROUND

Ms. Woodard lost her wallet at some point before March 18, 2011. (ECF No. 1 at ¶ 14). On March 18, 2011, someone presented a personal check from the Green Dot Corporation dated March 11, 2011, payable to Ms. Woodward. (*Id.* at ¶ 15.). There is ambiguity and disagreement

1

over who presented the check and the validity of the endorsement bearing Ms. Woodard's name. Regardless, upon the check's presentment, Green Dot's bank, Wells Fargo & Company ("Wells Fargo"), rejected it. (ECF. No 28 at 30). Ms. Woodard alleges she had nothing to do with this attempt to cash the check. (ECF No. 1 at ¶¶ 14-16). The check at issue is stamped as "Alter/Fict," by Green Dot's bank, which is banking nomenclature to classify a check as fictitious. (ECF No. 8 at 4). On September 28, 2011, Defendants sent a letter to Plaintiff to collect on the dishonored check, on behalf of Columbus Checkcashers. (ECF No. 8-2).

On July 10, 2015, Defendants filed a civil complaint against Ms. Woodward on behalf of Columbus Checkcashers for fraud in state court. (*Id.* at ¶¶ 19-21). In that action, Defendants alleged that the check had been dishonored and sought to collect damages, costs, and attorney fees. (ECF No. 8 at 2). Mr. O'Brien signed the Complaint over the O'Brien Firm's name as "Counsel for the Plaintiff." (ECF No. 1 at ¶ 520). In April 2016, the Franklin County Municipal Court awarded a default judgment against Ms. Woodard. (ECF No. 1 at ¶ 22.). In May 2016, Columbus Checkcashers changed its name to PLS Financial Solutions of Ohio. (ECF No. 21 at 2). The Court will refer to Columbus Checkcashers for purposes of consistency, but will retain references to PLS and similar entities when quoting the record.

On November 29, 2017, Ms. Woodard learned that Mr. O'Brien had misrepresented himself as having the authority to bring the suit against her, on behalf of Columbus Checkcashers, when he did not have such authority to file the suit on behalf of his purported client. (*Id.* at ¶ 28.). Ms. Woodard petitioned successfully for that court to vacate the default judgment on July 24, 2018. (*Id.* at ¶ 26.). Days before the judgement was vacated, Columbus Checkcashers also successfully moved the Municipal Court to disqualify Mr. O'Brien from representing Columbus Checkcashers. (*Id.* at ¶ 25.).

On November 26, 2018, Ms. Woodard brought this suit in federal court against Mr. O'Brien and his firm, alleging that they violated the Fair Debt Collection Practices Act ("FDCPA") by instituting the lawsuit on behalf of Columbus Checkcashers when they had no authority to do so. (ECF No. 1). Defendants brought a motion to dismiss arguing Ms. Woodard's claim was time-barred and, in the alternative, that she did not state a claim. (ECF No. 8). This Court denied Defendants' Motion to Dismiss. (ECF No. 18). On April 3, 2020, Plaintiff brought this Motion for Partial Summary judgment. Multiple pleadings related to Motions to Strike followed. (ECF Nos. 34, 37, 39, 42, 45).

This Court first reviews the numerous Motions to Strike before turning to Plaintiff's Motion for Partial Summary Judgment.

## II.    MOTION TO STRIKE

### A.  Standard of Review

The Court may, upon motion or on its own, strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Pr. 12(f).  Under Rule 56(c), affidavits may be considered in ruling on a motion for summary judgment. Motions to strike are entrusted to the "sound discretion of the trial court, but are generally disfavored." *Yates-Mattingly v. University of Cincinnati*, No. 1:11-cv-753, 2013 WL 526427, at *1 (S.D. Ohio Feb. 11, 2013). Indeed, "[s]triking pleadings is considered a drastic remedy to be used sparingly and only when the purposes of justice so require." *Id.* The Court should not grant a motion to strike if "the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits." *Joe Hand Promotions, Inc. v. Havens*, 2:13-cv-0093, 2013 WL 3876176, at *1 (S.D. Ohio July 26, 2013) (internal quotation omitted). Though many courts disfavor motions to strike for fear that they serve only to delay, they can also expedite cases by

removing "unnecessary clutter." *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

## B. Law & Analysis

To paraphrase Edgar Allen Poe, before this Court, "[i]s a [Motion to Strike] within a [Motion to Strike]." Edgar Allan Poe, *A Dream Within a Dream*, *in* THE COMPLETE POETICAL WORKS OF EDGAR ALLAN POE 142 (Reginald Brimley Johnson, 1903).

First, on June 5, 2020, Defendants filed a Motion to Strike the Affidavits of Gillian Madsen, Shovon Woodward, and Scott Torguson, which are appended to the Plaintiff's Motion for Partial Summary Judgment. (ECF No. 34). On June 25, 2020, Plaintiff filed an opposition in response to Defendants' Motion to Strike, arguing that the affidavits are admissible evidence. (ECF No. 39.). Even if not admissible, striking the statements is an improper remedy at the summary-judgment stage, Defendants contend. (*Id.*). On July 13, 2020, Defendants replied to Plaintiff's response in opposition to Defendants' Motion to Strike. (ECF No. 42).

Second, on June 22, 2020, Plaintiff moved to strike Defendants' Motion to Strike. (ECF No. 37). On August 3, 2020, Defendants filed a response in opposition to Plaintiff's Motion to Strike Defendants' Motion to Strike. (ECF No. 45).

This Court reviews these Motions to Strike in turn below.

### 1. Defendants' Motion to Strike Ms. Madsen's Affidavit

Appended to Plaintiff's Motion for Partial Summary Judgment is an affidavit of Gillian Madsen. (ECF No. 20-2). Ms. Madsen states that she is "Corporate Counsel for PLS Financial Services, Inc. ('PLS') and its affiliated entities." (*Id.* ¶ 1). The affidavit discusses Ms. Madsen's understanding of when Defendants were divested of the authority to represent Columbus Checkcashers. (*Id.*).

Defendants contend that Ms. Madsen's affidavit "contains rank hearsay and must be stricken." (*Id.*). In particular, there are two putative shortcomings with this affidavit. First, Defendants contend that there is inadmissible double hearsay in a few introductory paragraphs in the affidavit. Second, Defendants posit that Ms. Madsen is not competent to testify since she is not the relevant corporate attorney. This Court reviews each of these claims in turn.

First, Defendants assert that there is inadmissible double hearsay contained primarily in ¶¶ 4-6 of the Madsen affidavit. (ECF No. 34 at 2). In those paragraphs, Ms. Madsen states that she obtained information relating to Mr. O'Brien and his law firm from a previous corporate counsel for Columbus Checkcashers. (ECF No. 21-2 ¶¶ 4-6). These paragraphs are reproduced below:

> 4. As of March 1, 2012, PLS was the entity with authority to hire and fire collection counsel for CCC, including Kevin O'Brien & Associates, Inc. ("O'Brien Firm") and attorney Kevin O'Brien (Attorney O'Brien), (sometimes collectively referred to as O'Brien").

> 5. After March 1, 2012, PLS was the entity that would have executed any services agreement to retain counsel to collect and prosecute CCC matters.

> 6. O'Brien was not retained by PLS to act as collection counsel for CCC or CCC matters after October 2012. O'Brien was not authorized to continue the prosecution of the collection cases that had already been filed by O'Brien on behalf of CCC or to *file or prosecute* new cases on behalf of CCC after October 2012. *I obtained and confirmed this information by speaking with previous corporate counsel for PLS.*

(ECF No. 21-2 ¶ 6) (emphasis added).

As an aside, Defendants conjecture that it is "questionable" that Ms. Madsen spoke with previous corporate counsel for PLS because, they allege, the previous counsel was fired. (ECF No. 34 at 2). More to the point, Defendants insist that Ms. Madsen's statement that Mr. O'Brien and his law firm no longer had the authority to file or prosecute new cases is hearsay. Ms. Madsen did not speak directly with Mr. O'Brien during 2012, Defendants state, and she did not even come to work for PLS, Illinois until August 2013. (*Id.*).

Plaintiff responds to Defendants' Motion to Strike by claiming that Ms. Madsen's affidavit lays a proper foundation as a business record. (ECF No. 38 at 6, n.1). Interestingly, however, Plaintiff appears to concede that Ms. Madsen's affidavit is less-than-perfect. Plaintiff writes: "[T]he affidavit of Gillian Madsen is not even necessary to grant partial summary judgment to Ms. Woodard." (*Id.* at 6).

For a business record to be admitted as substantive evidence, each layer must meet some exception or exemption to the hearsay rule. Fed. R. Evid. 803(6). In other words, Ms. Madsen's statement is one layer; the previous corporate counsel's statement is yet another layer. It has not been shown that these dual out-of-court assertions would be admissible at trial. Nothing in Ms. Madsen's affidavit indicates that the former corporate counsel relayed this information to her in the ordinary course of business. And the statement is improper for yet another reason. The statement is submitted for the truth of the matter asserted, that is, that Mr. O'Brien and his law firm, *in fact*, lacked proper authority to act on the creditor's behalf. Paragraph six of Ms. Madsen's affidavit is hereby **STRICKEN**.

Second, and more generally, Defendants argue that Ms. Madsen is not competent to make an affidavit relative to a check negotiated by PLS, Ohio, because she is not that company's attorney. (ECF No. 34 at 1). At issue here is dissecting corporate hierarchy. Defendants emphasize that Ms. Madsen works for PLS Financial Services ("PLS, Illinois"), not PLS Financial Solutions of Ohio ("PLS, Ohio"), which are two separate corporations. Defendants say that PLS, Illinois, and PLS, Ohio are sibling companies owned by the same PLS parent company. But PLS, Ohio, is the successor-in-interest to Columbus Checkcashers. And because Ms. Madsen is corporate counsel for PLS, Illinois—but not for the parent company nor PLS, Ohio—she lacks first-hand knowledge of the events she describes in her affidavit. (ECF No. 42).

This Court appreciates Defendants clarifying the PLS' corporate structure and does find Ms. Madsen's affidavit a bit misleading insofar as the statement misrepresents her role as counsel PLS, Illinois, versus PLS, Ohio. The affidavit otherwise, however, has sufficient indicia of trustworthiness that it can be considered reliable and admissible. Other than paragraph six, which this Court struck above, the records to which Ms. Madsen cites were kept in the course of regularly conducted business activity and made by an individual with personal knowledge of the facts recorded.

This Court thus **GRANTS** in part and **DENIES** in part Defendants' Motion to Strike Ms. Madsen's affidavit.

### 2. *Defendants' Motion to Strike Ms. Woodard's Affidavit*

Next, Defendants move to strike Ms. Woodard's affidavit appended to her Motion for Partial Summary Judgment. (ECF No. 34 at 3-4). The movant argues that Plaintiff's affidavit should be stricken as inadmissible hearsay because it is not based on personal knowledge. Rather, Defendants assert that Plaintiff's affidavit is based upon what Plaintiff's former attorney, Scott Torguson, told her concerning Defendants' professional relationship with Columbus Checkcashers. As to the merits of Defendants' Motion, Plaintiff argues that her affidavit is admissible to show when she learned that Defendants lacked authority to represent Columbus Checkcashers, in furtherance of her argument that equitable tolling applies. (ECF No. 39). Plaintiff denies that her affidavit was submitted to prove that Defendants, in fact, lacked the authority to represent the creditor. (ECF No. 39).

In reply, Defendants claim that Ms. Woodard's affidavit is triple hearsay. Specifically, they state that Ms. Woodard learned of the Defendants' alleged lack of authority to represent the creditor from Mr. Torguson, who, in turn, learned it from an unnamed attorney. (ECF No. 42).

Defendants object to Plaintiff's suggestion that the affidavit is not being offered to prove the truth of the matter that Defendants lacked authority to represent Columbus Checkcashers. Defendants highlight for the Court that the thrust of Plaintiff's Partial Motion for Summary Judgment is that Defendants lacked such authority. Accordingly, they conclude that Ms. Woodard's affidavit should be stricken as it is submitted for the truth of the matter asserted.

Ms. Woodard's affidavit is submitted to establish when she came to believe that Defendants' lacked the authority to represent Columbus Checkcashers. This belief served as a predicate for arguing that equitable tolling applies to the FDCPA's statute of limitations. As a statement offered to show a speaker's knowledge, Ms. Woodard's affidavit is thus admissible non-hearsay. Defendants' Motion to Strike Ms. Woodard's affidavit is **DENIED**.

### 3. *Defendants' Motion to Strike Mr. Torguson's Affidavit*

Defendant moves the Court to strike the affidavit of Scott Torguson. Mr. Torguson served as Ms. Woodard's counsel in the state-court matter. He states in his affidavit: "The first time I became aware that Kevin O'Brien did not have authority to represent Columbus Checkcashers was on November 29, 2017, when I was contacted by a private attorney who forwarded a letter from PLS to Kevin O'Brien." (ECF No. 34 at 4).

Defendants say that Mr. Torguson's declaration is hearsay and factually insufficient for the following reasons: "What letter from PLS to Kevin O'Brien (date)? Who was the letter from at PLS? Which PLS entity allegedly sent the letter to O'Brien? Was the letter about the Woodard case? What did the letter say? Who was the 'private attorney' who forwarded the letter[?]" (ECF No. 34 at 4-5). Defendants ask this Court to strike Mr. Torguson's affidavit as impermissible hearsay.

Plaintiff argues that Mr. Torguson's affidavit is submitted for the permissible purpose of establishing when Mr. Torguson learned that Defendants no longer had authority to represent the creditor. (ECF No. 39). This knowledge is in furtherance of Ms. Woodard's claim that equitable tolling applies. Accordingly, Plaintiff attests that Mr. Torguson's affidavit is not hearsay because the testimony is not presented for the truth of the matter asserted—i.e., that Defendants lacked the authority to represent Columbus Checkcashers—but to show when Mr. Torguson gained that understanding and belief. (ECF No. 39).

Plaintiff presents Mr. Torguson's affidavit to prove that her former lawyer believed Mr. O'Brien and his law firm lacked the authority to represent Columbus Checkcashers. It is not used to establish (unlike stricken paragraph six of Ms. Madsen's affidavit) that Mr. O'Brien and his law firm lacked this authority. The statement is submitted not for the truth of the matter asserted, but as a predicate for subsequent steps related to Plaintiff's equitable-tolling argument. As a result, the affidavit is thus not hearsay at all, since it is offered to prove the speaker's knowledge. Defendants' Motion to Strike Mr. Torguson's Affidavit is **DENIED**.

### 4. *Plaintiff's Motion to Strike Defendants' Motion to Strike*

Plaintiff then moved to strike (ECF No. 37) portions of Defendants' Motion to Strike, (ECF No. 34). In particular, Plaintiff takes issue with the "vitriolic *ad hominem* attacks on the undersigned Plaintiff's counsel and other individuals." (ECF No. 37 at 1). She alleges that the first full paragraph on page five through the first full paragraph on page six of Defendants' Motion to Strike is "nothing more than completely unsubstantiated personal attacks" and must be stricken. (ECF No. 37).

For the sake of completeness, the Court reproduces the offending paragraphs from Defendants' Motion to Strike below:

As with PLS, Illinois, Defendants would invite the Court's attention to the fact that Scott Torguson plainly has an axe to grind with the Defendants. Mr. Torguson has recently left his position as director of the consumer section of the Columbus Legal Aid office, perhaps not voluntarily, and is pending an eighty thousand ($80,000.00) motion for sanctions brought by Defendants in the case of <u>First National Financial Services, Ltd. V. Stacia Ashley</u>, Case No. 2015 CVF 013668, Franklin County Municipal Court, and <u>Stacia Ashley v. Kevin O'Brien & Associates Co., L.P.A. et al</u>, Case No.: 16 CV 1795, Franklin County Court of Common Pleas. In the Municipal Court case, Mr. Torguson filed a Motion to Vacate First National's judgment against his client, Stacia Ashley, and filed an affidavit from Ashley which directly contradicted the stipulation Ashley had entered into to settle an earlier filed case with First National on the same matter. Further, at the time Torguson filed Ashley's affidavit, the case was paid in full and there was a satisfaction of judgment of record. Defendants and their client, First National Financial Services, had to participate in a trial and then litigate three (3) appeals to the Tenth District Court of Appeals before being vindicated. It is Defendants' position that Mr. Torguson and Ms. Ashley conspired to commit fraud and, indeed, perpetrated a fraud upon the Court, First National and O'Brien.

After filing her Motion to Vacate in the Municipal Court case, Mr. Torguson and Mr. Reichenbach, Plaintiff's Counsel in the present case, filed an FDCPA lawsuit against Mr. O'Brien and his firm in the Franklin County Court of Common Pleas, which they have now lost after filing three (3) frivolous appeals in the Tenth District Court of Appeals. Mr. Reichenbach is also pending sanctions in the Franklin County Court of Common Pleas case filed by Ashley against O'Brien. O'Brien and his firm will be filing suit against Ashley, Torguson and Reichenbach shortly for fraud."

(*Id.* at 5-6).

Plaintiff asks this Court to strike Defendants' Motion to Strike for six reasons: (1) The implication that Mr. Torguson was fired from his previous job should be stricken because, even if true, it is irrelevant; (2) Defendants accuse Mr. Torguson falsely of misdeeds in two state-court matters unrelated to this case; (3) Defendants, without any evidence, accuse Mr. Torguson and Ms. Ashley—the latter of whom has nothing to do with this matter—of conspiring and perpetrating a fraud; (4) Defendants falsely claim that Mr. Torguson filed three frivolous appeals in the case related to Ms. Ashley; (5) Defendants reference their motion for sanctions in a separate case involving Plaintiff's current attorney, Mr. Reichenbach, and also imply falsely that the court has made some determination on the merits of the case; and (6) Defendants threaten to sue Ms. Ashley, Mr. Torguson, and Mr. Reichenbach for fraud.

Plaintiff states that Defendants' acts of making these statements are for the improper purposes of intimidating, harassing, and threatening witnesses in general, as well as Mr. Reichenbach, and Ms. Ashley.

Defendants filed a response in opposition to Plaintiff's Motion to Strike, beginning by quoting Winston Churchill: "The truth is incontrovertible. Malice may attack it, ignorance may deride it, but in the end, there it is." (ECF No. 45 at 1). They then go on to argue that the misdeeds of Mr. Reichenbach (Plaintiff's current attorney) and Mr. Torguson (Plaintiff's former attorney) are relevant and admissible. In particular, they state that the Mr. Reichenbach and Mr. Torguson have a history of filing meritless cases to generate fees. Defendants feel "extorted" by these attorneys; they then wax on at length on a wholly separate matter involving Ms. Ashley, who has no relevance to this matter.

There is far too much acrimony in this case. Many of the accusations being hurled back and forth by both parties are unnecessary, impertinent, and distract from the parties' legitimate claims and defenses. Defendants' Motion to Strike, particularly the statements against Mr. Reichenbach and Mr. Torguson, cast a derogatory light on these individuals that is irrelevant and inflammatory. The invocation of Ms. Ashley, someone who is not a party to the current matter in any form or fashion, is inappropriate and extraneous. The above-cited paragraphs fall comfortably within the ambit of "redundant, immaterial, impertinent, [and] scandalous" language, justifying granting Plaintiff's Motion to Strike. Fed. R. Civ. P. 12(f). Plaintiff's Motion to Strike Defendants' Motion to Strike is **GRANTED**. (ECF No. 37).

For similar reasons, this Court takes issue with the third paragraph on page three of Plaintiff's Motion to Strike. (ECF No. 37 at 3). Plaintiff argues:

The improper purpose of these unfounded personal attacks is even more clear when viewed in a larger context. This is part of Defendants' pattern of such conduct. See, for example,

Doc. 28 filed in this case, PageID 340 (accusing Gillian Madsen of conspiring with Mr. Torguson and with the undersigned); *O'Brien v. Herold et al.*, S.D. Ohio No. 2:20-cv-02406 (suing relators for the Columbus Bar Association and the disciplinary panel in relation to O'Brien's pending disciplinary proceeding); *Morton v. O'Brien*, S.D. Ohio No. 2:18-cv-00445, Doc. 12, PageID 60 (falsely accusing counsel of purposely urging his client to file a frivolous suit to generate attorney fees); *Id.* at Doc. 32, PageID 290 (same, and accusing counsel of conspiring with a witness; threatening to add allegations to his existing suit against PLS Financial, a witness in this case, the Morton case, and O'Brien's disciplinary case; and threatening to add witness PLS as a third-party defendant); *Id.* at Doc. 33, PageID 295 (accusing counsel of churning merely to generate fees); PageID 297 (threatening additional claims against witness PLS); *Ashley v. O'Brien*, Franklin C.P. No. 16 CV 001795, Motion for Sanctions Feb. 6, 2020, p. 5 (accusing the plaintiff there of extortion and calling counsel "pathetic"). And that is just part of what is "on the record." Off the record, defense counsel has previously threatened sanctions in this and the Morton case, even after both courts denied Defendants' motions to dismiss, and has inappropriately offered to "settle" Defendants' motion for sanctions in the Ashley case in exchange for the undersigned dismissing this case and the Morton case.

(*Id.*).

Courts may strike an inappropriate portion of the pleadings on its own accord. *See Zep Inc. v. Midwest Motor Supply Co.*, 726 F. Supp. 2d 818, 822 (S.D. Ohio 2010) (explaining courts have the power to control their dockets, which entails the power to strike a document or a portion of a document). Plaintiff's Motion to Strike contains "[o]ff the record" allegations against the Defendants. (ECF No. 37 at 3). It alleges that Defendants engaged in harassing and frivolous conduct in cases not relevant here. It would be teetering on hypocrisy to strike Defendants' statements that cast a derogatory light on individuals who are not parties to this matter, while permitting Plaintiff's counsel to cast a derogatory light on Defendants' behavior in other cases. It is important to note, however, that the Court is not expressing any opinion on the merits of the accusation that Defendants have engaged in deliberate and harassing conduct. Rather, this Court emphasizes that there are other avenues to deal with allegedly problematic behavior by opposing counsel. But this paragraph of Plaintiff's Motion to Strike Defendants' Motion to Strike appears to be a motion for sanctions in a motion to strike's clothing. If either party wishes to file a motion

for sanctions, they may do so. As of yet, however, the third paragraph on page three of Plaintiff's Motion to Strike is hereby **STRICKEN**.

Accordingly, the Court rules as follows: Defendant's Motion to Strike is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 34); Plaintiff's Motion to Strike Defendants' Motion to Strike is **GRANTED**. (ECF No. 37); and the third paragraph contained in Plaintiff's Motion to Strike is **STRICKEN**. (ECF No. 37 at 3).

### III.    MOTION FOR PARTIAL SUMMARY JUDGMENT

#### A.  Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in the non-moving party's favor. *United States Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In determining whether a party is entitled to summary judgment on an FDCPA claim, this Court must apply the "least sophisticated consumer" standard. *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir. 1992). The standard is an objective one, meaning that a plaintiff does not

need to prove that she was actually confused or misled, but only that the least sophisticated debtor would be. This standard reflects the statute's remedial purpose and "recognizes that the FDCPA protects the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014). Further, "[t]he FDCPA is a strict-liability statute," meaning "[a] plaintiff does not need to prove knowledge or intent, and does not have to have suffered actual damages." *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448-50 (6th Cir. 2014) (internal citations omitted).

### B. LAW & ANALYSIS

To state a claim under the FDCPA: "(1) plaintiff must be a 'consumer' as defined by the Act; (2) the 'debt' must arise out of transactions which are 'primarily for personal, family or household purposes;' (3) defendant must be a 'debt collector' as defined by the Act; and (4) defendant must have violated § 1692e's prohibitions." *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012). It is undisputed that Defendants are a "debt collector" as defined by the FDCPA.

As to the merits of her claims, Plaintiff raises subsections of two substantive FDCPA provisions: 15 U.S.C. §§ 1692e and 1692f. Section 1692e states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Similarly, § 1692f forbids the use of "unfair or unconscionable means to collect or attempt to collect any debt."

This Court first addresses whether the FDCPA applies at all before turning to the FDCPA's substantive provisions.

*1.  Applicability of the FDCPA*

*i.  Is Plaintiff A "Consumer"?*

The FDCPA applies only to debts owed by a "consumer," defined as a "natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Defendants posit that Plaintiff is not a "consumer" at all. (ECF No. 28 at 3). In support of this contention, Defendants attach an affidavit of Michael Menz, an employee of the Green Dot Corporation. (*Id.* at 28-1). Mr. Menz determined that the Green Dot Corporation never issued a check to Ms. Woodard and that the check at issue is counterfeit and was appropriately endorsed as such by Green Dot's bank, Wells Fargo. (*Id.*). In addition, Defendants attach the affidavit of Claire Pratts, who was the Collection Manager of Columbus Checkcashers. (*Id.* at 28-2). Ms. Pratts notes that the check from Green Dot to Ms. Woodward is counterfeit and, again, is endorsed as such by Green Dot's bank. (*Id.*).

Plaintiff contends that she is a "consumer" under the statute.  (ECF No. 21 at 9-11). She submits the following to establish that the debt incurred was a "consumer" debt: (1) Defendants' actions in litigating the collection case against Plaintiff; (2) Defendants' treatment of the debt as a consumer debt by including FDCPA disclaimers on their September 28, 2011 collection letter to Plaintiff; (3) Defendant's admission of being "debt collectors; and (4) that the FDCPA protects those wrongly identified as debtors, with some of its statutory subsections giving some non-consumers rights of enforcement. This Court reviews each argument in turn.

First, a suit brought against an individual in her personal capacity does not demonstrate that the debt at issue was a consumer debt, since individuals can be sued in their personal capacity for a business debt. *See, e.g.*, *Matin v. Fulton, Friedman & Gullace LLP*, 826 F. Supp. 2d 808, 812

(E.D. Pa. 2011) (finding that defendants' attempt to collect from plaintiff personally was not relevant to the nature of the debt).

Second, Plaintiff submits that Defendants' treatment of the debt as a consumer debt indicates that it is a "consumer debt" within the meaning of the statute. Courts have held that the mere inclusion of FDCPA disclaimers on debt-collection letters does not in and of itself indicate that a debt is a consumer debt. *Evenson v. Palisades Collection, LLC*, No. 2:13-cv-1226, 2015 WL 3466936, at *5 (S.D. Ohio June 1, 2015) (unpublished) (observing that, even if defendants included validation information in collection communications, "the debt collector's treatment of an obligation as one under the FDCPA [was] irrelevant to . . . the nature of the obligation itself").

Third, Defendants' general admission that they function as debt collectors does not establish that the debt in this case was a consumer debt. *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 582 (7th Cir. 2019) ("[The defendants' marketing material generally describing their debt collection services do not establish that the debt they attempted to collect *in this case* was a consumer debt.").

Fourth, Plaintiff argues that because the FDCPA protects those wrongly identified as debtors. Ms. Woodard purports to be a wrongly identified debtor because her wallet was stolen and she says that she had nothing to do with the presentment of the check in March 2011. (ECF No. 1 at ¶¶ 14-15). Defendants retort that this is not a case of identity theft, but of fraud. (ECF No. 28 at 3). This argument, in contrast to the foregoing three arguments, holds the most promise. Below, this Court analyzes whether Plaintiff is a "consumer," despite the fact that the check at issue was stamped as fictitious.

When determining if an individual is a "consumer" under the FDCPA, the typical inquiry is to ask whether the debt was for "personal, family, or household purposes." *Martin v. Allied*

*Interstate*, LLC, 192 F. Supp. 3d 1296, 1306 (S.D. Fla. 2016). A slightly different inquiry is used in cases of identity theft or mistaken identity. As the Sixth Circuit explained in *Bridge*, "a 'consumer' under the FDCPA includes those who are mistakenly alleged to have owed a debt." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012) ("A defendant may not retroactively change the status of the plaintiff it has pursued as an alleged debtor."). To hold otherwise would create an obstacle for plaintiffs that would "contravene both the plain meaning and purpose of the FDCPA." *Id.*; *see also Byes v. Telecheck Recovery Servs., Inc.*, No. CIV.A. 94-3182, 1997 WL 736692, at *3 (E.D. La. Nov. 24, 1997). *But see Toroussian v. Asset Acceptance, LLC*, No. CV 12–03519 DDP (AGRx), 2013 WL 5524831 at *6 (C.D.Cal. Oct. 4, 2013) (granting summary judgment for defendant on FDCPA claim where victim of identity theft did not produce evidence concerning the nature of the charges made with the credit card opened in her name). Moreover, the FDCPA itself defines a "consumer" as "any natural person obligated or *allegedly* obligated to pay any debt." 15 U.S.C. § 1692(3) (emphasis added).

Accordingly, this Court finds there is no set of facts supporting an interpretation that Plaintiff is not a consumer, even accepting the Defendants' interpretations of events as true. This Court finds that no genuine issue of material fact exists regarding whether Plaintiff is a "consumer." Plaintiff's Partial Motion for Summary Judgment as to the question of whether she is a "consumer" is **GRANTED**.

### 2. *Is There a "Transaction"?*

To constitute a debt under the FDCPA, the obligation must emerge from of a "transaction." Defendant argues that there is no debt because Plaintiff's obligation arises out of an identity theft rather than a proper "transaction." (ECF No. 8 at 3). Plaintiff counters that courts "overwhelmingly

agree that an alleged debt founded on passing a bad check is a 'debt' triggering protection under the FDCPA." (ECF No. 10 at 7).

As discussed in this Court's review and denial of Defendant's Motion to Dismiss, the majority of courts in the Sixth Circuit and elsewhere have determined that debts founded on dishonored or bad checks qualify as "debts" under the FDCPA. *Gradisher v. Check Enf't Unit, Inc.*, 133 F. Supp. 2d 988, 990 (W.D. Mich. 2001) ("The collection of the amount owed to another because of a bad check is debt collection under the FDCPA."); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1325 (7th Cir. 1997) ("As long as the transaction creates an obligation to pay, a debt is created. We harbor no doubt that a check evidences the drawer's obligation to pay for the purchases made with the check, and should the check be dishonored, the payment obligation remains."); *Duffy v. Landberg*, 133 F.3d 1120, 1123 (8th Cir.1998) (finding that a dishonored check constitutes an FDCPA debt); *Charles v. Lundgren & Assocs., P.C*, 119 F.3d 739, 742 (9th Cir. 1997) (same); *see also Brown v. Am. Mut. Holdings Inc.*, No. 1:13-CV-01072-PLM, 2017 WL 2728409, at *5 (W.D. Mich. June 6, 2017), *report and recommendation adopted*, No. 1:13-CV-1072, 2017 WL 2729098 (W.D. Mich. June 23, 2017) (noting that bringing a suit for fraud in state court is an attempt to collect a "debt" and discussing in depth and approvingly Third Circuit decision that bounced checks do constitute debts within the meaning of the FDCPA).

Defendant adds no new caselaw in its response. (ECF No. 28 at 4 ("Rather than restate the law which has already been provided, Defendants reallege and incorporate all of the arguments they made in connection with the filing of the Defendants' Motion to Dismiss . . . .")).

This Court finds no genuine issue of material fact exists regarding whether the consumer debt at issue emerged from a "transaction." The transaction created an obligation to pay. As a

result, the transaction created a debt. *See Brown v. Budget Rent–A–Car Sys. Inc.*, 119 F.3d 922, 924 (11th Cir. 1997). Plaintiff's Partial Motion for Summary Judgment on this question of whether the FDCPA applies in this case is **GRANTED**.

### C. FDCPA Substantive Provisions

Having established that the FDCPA applies to this case, this Court now turns to the Plaintiff's substantive arguments under the FDCPA, specifically, §§ 1692e, 1692f.

*1. Section 1692e Background*

Section 1692e of the FDCPA prohibits "false, deceptive or misleading representation or means in connection with the collection of any debt." Such false, deceptive, or misleading representations include, but are not limited to: (1) falsely representing the "character, amount, or legal status of any debt;" and (2) using "any false representation or deceptive means to collect or attempt to collect any debt."

Plaintiff alleges that Defendant violated § 1692e by using deceptive means in attempt to collect a debt that Plaintiff allegedly owed. (ECF No. 21). Primarily, Plaintiff claims that Defendants' representations that they were Columbus Checkcashers' legal counsel, when Defendants, in fact, lacked such authority, was a false, deceptive, or misleading representation.

The question is when the Defendants were divested of their authority to represent Columbus Checkcashers. The date around which resolution of this question centers is February 9, 2018. On February 9, 2018, Mr. O'Brien and the O'Brien law firm filed in Franklin County Municipal Court a memorandum contra Ms. Woodard's motion to vacate judgment, purportedly on behalf of their client, Columbus Checkcashers. If the Defendants had no authority to file the February 9 memorandum, Plaintiff argues, then their representation of Columbus Checkcashers was false, deceptive, and misleading under the FDCPA.

As a threshold consideration, everyone agrees that Defendants no longer have authority to represent Columbus Checkcashers. But Defendants contend that there is a triable issue of fact as to when Columbus Checkcashers suspended their relationship with Defendants. In particular, Defendants claim that Columbus Checkcashers has alleged multiple dates as the termination date—March 2012, October 2012, November 2012, November 2017, February 2018, May 2018, and July 2018. (ECF No. 28 at 5). In other words, there are seven different dates at which Defendants may have been stripped of the right to represent Columbus Checkcashers.

Plaintiff argues that, on or before February 9, 2018, Defendants knew that Columbus Checkcashers had terminated Mr. O'Brien as counsel. As a result, she argues that Defendants' filing of the memorandum contra on February 9, 2018 was done knowingly and in full awareness that they were terminated as counsel. Defendants argue that when they were terminated as Columbus Checkcashers' counsel is less clear and must be decided at trial.

It is important to establish the factual landscape on which this Court proceeds before analyzing the viability of the related claims and defenses. This Court reviews the evidence the parties submitted suggesting the various dates on which Defendants lost their authority to represent Columbus Checkcashers as legal counsel—i.e., March 2012, October 2012, November 2012, November 2017, February 2018, May 2018, and July 2018. (*Id.*). For ease of reference, following factual summary is divided by the February 9, 2018 date.

### 2. *Before the February 9, 2018 Filing*

#### i. *March 2012*

On May 18, 2018, Attorney Beth Miller, representing PLS Financial Services, sent a letter to Mr. O'Brien and the O'Brien firm. (ECF No. 21-3). In relevant part, it reads: "[Y]our services for Columbus Checkcashers, Inc. ('CCC') . . . ended *on March 1, 2012*, when PLS took over

management of CCC . . . After that date, no one connected in any way with either CCC or PLS ever retained your firm, or authorized you to act in any manner on behalf of CCC or PLS, which you plainly knew as evidenced by the fact that you have had no communications with anyone at CCC or PLS for more than a decade." (*Id.*) (emphasis added).

*ii.    October 2012*

On July 26, 2018, Attorney Beth Miller, representing PLS, again wrote to Mr. O'Brien and the O'Brien firm. (ECF No. 21-3). In relevant part, it reads:

> Moreover, the spreadsheet on the flash drive indicates that O'Brien is seeking court costs that were incurred by O'Brien after O'Brien was explicitly instructed by PLS *on October 3, 2012*, and again on *October 6, 2012*, to stop all actions. O'Brien proceeded to file complaints, obtain judgments, and execute upon judgments for five (5) years without any authority from or contact with PLS, Ohio PLS or any PLS-affiliated entity.

> (*Id.*) (emphasis added).

On October 3, 2012, Michael Filla, the Collections Recovery Manager at PLS emailed Mr. O'Brien. He wrote, "Kevin please stop all action on all Cincinnati, Columbus, and Cleveland Check Cashing stores." (ECF No. 21-2). The next day, Mr. O'Brien responded, asking Mr. Filla to contact him "to discuss the pending cases." (*Id.*). Mr. Filla replied, "Kevin I was told to have you stop all activity on these accounts as we have no way to know balances and validate these debts." (*Id.*).

This Court does not address the stricken portion of Ms. Madsen's affidavit. (*See supra* pp. 4-7 (citing (ECF No. 21-2, ¶ 6)).

*iii.    November 2012*

Mr. O'Brien represented in that "[o]ver the course of the next few months [after October 2012], I tried to contact Mr. Kleiman [former Columbus Checkcashers corporate counsel] via

phone at his office in Chicago; he never returned any of my calls; further, I never spoke with anyone else at PLS until November, 2017." (ECF No. 8-2 ¶ 15).

<em>iv.    November 2017</em>

On November 14, 2017, Ms. Madsen, corporate counsel for PLS Financial Services, Inc., sent a letter via email and snail mail to Mr. O'Brien, stating, in full:

> Immediately cease and desist from all collection or other activities purporting to be on behalf of Columbus Check Cashers, Inc. ("CCC") or any of its affiliates. Your activities on behalf of CCC have been without knowledge of CCC or its corporate parent, and without any communications with CCC or its corporate parent, for at least five years. Please immediately provide an accounting of all moneys you have collected, purportedly on behalf of CCC or any of its affiliates, since the earlier of January 1, 2012 or the date upon which you last provided an accounting to CCC.

(ECF No. 21-2 ¶ 14).

Further, as part of this litigation, Defendant O'Brien submitted an affidavit in which he stated: "On/about November 14, 2017, I received a letter from PLS dates November 14, 2017, asking my firm to stop collection activity on behalf of CCC and to provide an accounting of collection activity since January 1, 2012; *the letter did not terminate my firm as legal counsel for CCC*; this is the first communication I have received from PLS asking my firm to stop collection activity on behalf of CCC." (ECF No. 21-8, ¶ 22) (emphasis added).

Finally, Attorney Scott Torguson, who represented Ms. Woodward in the Franklin County Municipal Court case proceedings from December to June 2019, submitted in a declaration: "The first time I became aware that Kevin O'Brien did not have authority to represent Columbus Checkcashers was on *November 29, 2017* when I was contacted by a private attorney who forwarded me a letter from PLS to Kevin O'Brien. Up until that date, I had no reason to consider the possibility that Kevin O'Brien did not have authority to represent Columbus Checkcashers." (ECF No. 21-6) (emphasis added).

### 3. *After the February 9, 2018 Filing*

On February 9, 2018, Defendants filed, purportedly on behalf of Columbus Checkcashers, a memorandum contra Ms. Woodard's motion to vacate judgment in Franklin County Court. (ECF No. 21 at 5).

#### i. *February 2018*

On February 16, 2018, Corporate Counsel Ms. Madsen once again sent a letter and emailed Mr. O'Brien, stating, in full:

> It is astonishing to me that after PLS's letter to you of November 14, 2017 directing you to immediately cease and desist from all collection or other activities purporting to be on behalf of Columbus Check Cashers, Inc. ("CCC") or any of its affiliates, you are continuing to file pleadings In which you purport to represent CCC.
>
> To reiterate: You and your law firm are to immediately cease and desist from all activities purporting to be on behalf of CCC. <u>Neither you. nor your law firm, represent CCC.</u> Nor have you, or your law firm, been authorized to represent CCC for at least the past five years. Your position that you have not yet been "terminated" as CCC's counsel is specious, as there is no attorney client relationship to terminate.

(ECF No. 21-2) (emphasis in original).

#### ii. *May 2018*

In May 2018, the Franklin County Municipal Court entered a show-cause order for Mr. O'Brien and the O'Brien Firm.

In addition, the above-mentioned May 18, 2018 letter was written this month. (ECF No. 21-9 at 1 ("[Y]our services for Columbus Checkcashers, Inc. ('CCC') . . . ended on March 1, 2012, when PLS took over management of CCC . . . After that date, no one connected in any way with either CCC or PLS ever retained your firm, or authorized you to act in any manner on behalf of CCC or PLS, which you plainly knew as evidenced by the fact that you have had no communications with anyone at CCC or PLS for more than a decade.")).

#### iii. *July 2018*

On July 17, 2018, the Franklin County Municipal Court entered an order, noting, "Through counsel [Beth Miller], PLS . . . explicitly requests that the Court disqualify Attorney Kevin O'Brien as counsel for Plaintiff [*i.e.*, Columbus Checkcashers]." (ECF No. 21-9).

### 4. *Section 1692e Analysis*

Summary judgment is proper if there is no genuine issue of material fact as to whether the Defendants used any false, deceptive, or misleading representation or means in connection with the debt at issue, pursuant to § 1692e. Resolution of this question comes down to when Defendants' authority to act on behalf of Columbus Checkcashers terminated. The specific question is whether Defendants' filing on February 2018 would mislead or deceive the least sophisticated consumer.

This Court highlights first which facts are *not* in dispute, before turning to the contested issues. It is undisputed that in early November 2017, Columbus Checkcashers ordered Defendants to stop all *collection* activity. (ECF No. 8-1, Ex. D, ¶ 22). It is undisputed also that Defendants' *legal* representation ended, completely, by July 2, 2018, when the county court entered an order disqualifying Mr. O'Brien and his law firm as counsel for Columbus Checkcashers.  In dispute is whether Defendants' legal representation of Columbus Checkcashers ended before the filing of the February 9, 2018 brief: Defendants argue their status as legal counsel ended no earlier than July 2018; Plaintiff argues Defendants ceased being Columbus Checkcashers' counsel before the February 9, 2018 filing.

It strains credulity to think Defendants were not on notice that Columbus Checkcashers suspended Defendants as counsel and debt collectors before the filing of the February 9, 2018 memorandum. There were repeated and unequivocal demands for Defendants to cease any activities—legal *and* collection—on Columbus Checkcashers' behalf. In October 2012, Defendants were instructed unequivocally to "stop *all* activity on these accounts." (ECF No. 21-

2, ¶ 6) (emphasis added). Four years later, in November 2017, Defendants again were instructed to "[i]mmediately cease and desist from all collection or *other activities* purporting to be on behalf of Columbus Check Cashers, Inc. ("CCC") or any of its affiliates." (ECF No. 21-2) (emphasis added).

The October 2012 letter to stop "all activity" coupled with the November 2017 communication to "cease and desist from all collection or other activities" establish a clear-cut and categorical command for Defendants to stop all representation on Columbus Checkcashers' behalf. Yet, at all relevant times, Defendants concealed from and failed to disclose to Plaintiff their lack of authority to represent Columbus Checkcashers.

The Court asks now whether the filing of the February 9, 2018 brief amounts to a fundamental misrepresentation in violation of § 1692e.

Section 1692e has enumerated statutory violations. Such enumerated proscribed includes "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). The FDCPA also prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

Defendants' actions, particularly those occurring after November 14, 2017, violated these sections. Defendants violated § 1692e(10) when they misrepresented their identity as Columbus Checkcashers' debt collector and legal counsel. For similar reasons, Defendants' filing of the memorandum contra—when Defendants lacked any authority to represent Columbus Checkcashers—violated.§ 1692e(10) because it amounted to taking an action that cannot legally be taken. Put differently, a lawyer cannot file a suit on behalf of a party that is not their client. And, where, as here, a lawyer does so, it amounts to a fundamental misrepresentation under the FDCPA.

What is more, Defendants' misrepresentations were material, as "a statement [that] would tend to mislead or confuse the reasonable unsophisticated consumer." *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326-327 (6th Cir. 2012). Plaintiff represents that Defendants' misrepresentation actually affected her, by delaying resolution of her motion, and causing her to be disturbed and worried.

Yet another enumerated section is applicable here. Section 1692e(iii) prohibits a false representation or implication that that an individual is an attorney or that any communication is from an attorney. Here, because it is established that Defendants knowingly lacked any authority to file the February 2018 memorandum, the filing was not in any sense "from" an attorney because their putative client, Columbus Checkcashers, did not authorize the filing.

Even if Defendants' actions did not fall into the above-discussed enumerated statutory subsections, § 1692e is a non-exhaustive statute. As a result, a finding that a debt collector used any false, deceptive, or misleading representation, implication, or means amounts to a violation. As open-ended as the statute's prohibition on false, deceptive, or misleading representation is, Defendants' filing of the February 9, 2018 memorandum falls comfortably within the FDCPA's ambit.  At the very least, Defendants should have—but did not—clarify to Plaintiff that it no longer was a collector for Columbus Checkcashers. Further, upon the clear and unambiguous demands that Defendants stop *all* activity purportedly on behalf of Columbus Checkcashers, any subsequent action (including the filing of the February 2018 memorandum contra) was inherently misleading under the statute. This Court does not go so far to say that Defendants filed the brief out of malice to the Plaintiff, but the filing was outwardly deceptive and misleading.

Defendants' filing of the February 8 memorandum contra thus violated the FDCPA's prohibition on false, deceptive, and misleading representations. *See McMillan v. Collection*

*Professionals Inc.,* 455 F.3d 754, 762 (7th Cir. 2006) (finding, at the motion to dismiss stage: "By calling into question a debtor's honesty and good intentions simply because a check was dishonored, a collection letter may be making a statement that is false or misleading to the unsophisticated consumer."); *see also Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 534 (6th Cir. 2014) (citing *McMillan* with approval).

### 5.  Section 1692f

In addition to prohibiting misrepresentations under § 1692e, the FDCPA also prohibits "unfair and unconscionable" collection methods under § 1692f. Section 1692f's prefatory clause contains a non-exhaustive list of conduct that violates the statute. Included on the list of enumerated violations is, for example, charging an individual for communications by concealing the true purpose of the communications and collecting of any amount that is not expressly authorized by the debt agreement or by law. 1692f(1), (3). Because §§ 1692f and 1692e are alternatives to each other, it is not necessary for this Court to have an extended discussion of § 1692f. For sake of completeness, however, the Court explores whether the Defendants' actions constituted unfair collection methods under § 1692f.

The Sixth Circuit has not defined "unfair or unconscionable," though it applies the familiar rules of statutory interpretation to make sense of these broad adjectives. *Limited, Inc. v. C.I.R.,* 286 F.3d 324, 332 (6th Cir. 2002) (explaining under the rule of noscitur a sociis, the court should view the undefined term in light of its associates). Moreover, the Sixth Circuit and other courts view § 1692f as a backstop to collection behavior that does not violate § 1692e. *Rogers v. Capital One Servs.*, LLC, 447 Fed. Appx. 246, 249 (2d Cir. 2011) (describing § 1692f as a "catchall provision").

Like its statutory forerunner, § 1692f envisions both enumerated and unenumerated statutory violations.  Under the enumerated sections of the statute, there is a unifying theme among

precedent: guarding against the invasion of privacy and preventing embarrassment. *See Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 755 (6th Cir. 2020) ("Like the account number in *Douglass*, this type of 'disclosure implicates a core concern animating the FDCPA—the invasion of privacy'—and accordingly is not benign."); *see also Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014) ("Maintaining an invalid lien against a debtor's home . . . exposed Currier to publicity and damaged her credit. This practice would cause at least as much improper public exposure as communicating with a consumer via post card or sending mail with a symbol other than the debt collector's address."). Elsewhere, courts have determined *unenumerated* conduct to be unfair and unconscionable. *See Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 713 (6th Cir. 2015) ("In each section, Congress provided a non-exhaustive list of examples of banned practices.").

Here, the question is whether a debt collector acting as legal counsel was engaged in "unfair or unconscionable means to collect or attempt to collect any debt," where the collector intentionally files a memorandum contra on behalf of a former client.

Plaintiff claims that Defendants' *act* of opposing Ms. Woodward's motion to vacate the judgment in the county court—without any authority to do so—was unfair and unconscionable. Defendants do not respond directly to this claim. But, impliedly, Defendants retort that they had legitimate authority to file the motion on Columbus Check Cashers' behalf. Even if they lacked such authority, however, they contend—again, impliedly—that the false or misleading misrepresentation was not an unfair or unconscionable act.

This Court finds that Defendants' actions violated the statute's prohibition of committing an unfair and unconscionable act. It appears that Plaintiff is being used as a proxy war for disputes between Mr. O'Brien, his law firm, and Columbus Checkcashers over unreimbursed court costs—

a dispute that began in 1997, more than twenty years ago. It is fundamentally unfair for Defendants to use Plaintiff as a pawn in a business dispute. Even a passing review of the motions indicate that Ms. Woodard falls on the periphery of the dispute between Mr. O'Brien and Columbus Checkcashers:

> The PLS entities have an axe to grind with O'Brien. PLS Financial Solutions of Ohio, Inc., owes O'Brien in excess of $112K in unreimbursed case expenses, mostly filing fees, which it is refusing to pay despite clear-cut law from the Ohio Supreme Court . . . . O'Brien's lawsuit against the PLS entities have rankled Gillian Madsen which has caused her to engage in questionable conduct. Madsen plainly conspired with Scott Torguson, Ms. Woodard's former Counsel, to vacate the almost ten thousand dollar judgment for fraud taken by O'Brien against Woodard in the Franklin County Municipal County . . . ."

(ECF No. 28 at 5, 6).

This Court does not express any opinion whatsoever on the legal merits of the dispute between Mr. O'Brien, his law firm, and PLS, to the extent that these questions are not before the Court. It does, however, take strong issue with the use of Ms. Woodard as a pawn in these business disputes. Continuing to take legal action against Ms. Woodard in this manner arises to an unfair act in violation of the FDCPA. The least sophisticated consumer, if not all consumers, would regard filing an action in county court—using state procedural mechanisms—as an unfair or unconscionable means to collect or attempt to collect the debt. Defendants actions fall comfortably within the sort of prohibited conduct that Congress hoped to proscribe. This is particularly so because Defendants' February 2018 state-court filing of the memorandum contra against Ms. Woodard appears valid on its face, thus representing to the least sophisticated consumer and the public at large that the creditor had a right to initiate that judgment. The filing of the memorandum contra was thus unfair since it amounted to a misrepresentation both of Defendants' ability to act on Columbus Checkcashers' behalf; the filing was also unfair as Defendants sought to recover monetarily not from Ms. Woodard, but from Columbus Checkcashers, their putative client.

### D.  Statute of Limitations

Defendants argue that Plaintiff's claims are time-barred because she brought this claim more than one year after the alleged violation occurred. (ECF No. 28 at 2). Specifically, Defendants argue that even if the judgment taken by Defendants against Plaintiff on May 2, 2016 was an FDCPA violation, the statute of limitations on the FDCPA claim has still expired, given the one-year limitation.

As explained in this Court's order denying Defendants' Motion to Dismiss, the Sixth Circuit recognizes the "discovery rule." The discovery rule permits the one-year statute of limitations to begin tolling from the date that Plaintiff learned or had reason to learn of the FDCPA violation. Plaintiff cites to *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 430 (6th Cir. 2015), but in that case, the Sixth Circuit did not expressly determine that the discovery rule or equitable tolling apply. The Sixth Circuit has expressly avoided determining whether the discovery rule applies to the FDCPA's statute of limitations. *See Lloyd v. Midland Funding, LLC*, 639 F. App'x 301, 306 (6th Cir. 2016) ("We have never decided whether this statute of limitations includes a discovery rule, and we need not resolve the point today."). Nonetheless, in the past, this Court has equitably tolled the statute of limitations for FDCPA claims until the time that the borrower "'had reasonable opportunity to discover the fraud involving the complained' of violation." *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 430 (6th Cir. 2015) (citing *Foster v. D.B.S. Collection Agy.*, 463 F.Supp.2d 783, 799 (S.D. Ohio 2006) (determining that Defendants failed to prove that Plaintiff's claims were time barred because they did not specify the time when the class members discovered or had reasonable opportunity to discover Defendants' alleged misrepresentations)).

Plaintiff did not learn of Defendants' lack of authority to represent Columbus Checkcashers until November 29, 2017. (ECF No. 1 at). This suit was filed less than one year later, on November 26, 2018. Defendants have thus failed to prove that Plaintiff's claims are time barred.

### E. Affirmative Defenses

#### A. Bona Fide Error Defense

Nor does the "bona fide error" defense shift this Court's conclusions. That defense provides a safe harbor for debt collectors, if it is shown "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). This Court concludes that the Defendants have not shown that the violation was unintentional.

#### B. Noerr-Pennington Doctrine

In their Answer, Defendants contended they are protected from Plaintiff's FDCPA claims by the Noel-Pennington doctrine, which protects certain activities argued to be within the ambit of the First Amendment's Petition Clause. The FDCPA, however, specifically includes lawyers and litigation activities within its statutory ambit, making the Defendants' affirmative defense inapposite. *See Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 719 (6th Cir. 2015). This Court finds that the Noerr-Pennington doctrine is not an adequate defense to Plaintiff's FDCPA claim, insofar as it relates to the state-court debt collection litigation and post-judgment court proceedings.

#### C. Remaining Defenses

The remaining affirmative defenses (that Plaintiff's claims were frivolous and that she had not been damaged and, at any rate, that Defendants acted in good faith in initiating and the collection actions) are controverted by the foregoing analysis.

The Court therefore **GRANTS** Plaintiff's Motion for Summary Judgment on Defendants' Affirmative Defenses.

## IV.   CONCLUSION

Accordingly, the Court rules as follows: Defendant's Motion to Strike is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 34); Plaintiff's Motion to Strike Defendants' Motion to Strike is **GRANTED**. (ECF No. 37); and the third paragraph contained in Plaintiff's Motion to Strike is **STRICKEN**. (ECF No. 37 at 3). The Court **GRANTS** Plaintiff's Motion for Summary Judgment. (ECF No. 20).

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  December 4, 2020**