UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHOVON WOODARD, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:18-cv-1523 |
| | : | |
| v. | : | Chief Judge Algenon L. Marbley |
| | : | |
| KEVIN JOHN O'BRIEN, *et al.*, | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| Defendants. | : | |

OPINION & ORDER

This matter is before the Court on Plaintiff's Motion for Order on Agreed Damages (ECF No. 70) and Plaintiff's Motion for Attorney Fees (ECF No. 77). For the reasons that follow, Plaintiff's Motions are **GRANTED**.

I. BACKGROUND

Plaintiff filed this case against Defendant O'Brien and his law firm, Defendant Kevin O'Brien & Associates Co., L.P.A., on November 26, 2018. Plaintiff alleges Defendants violated the Fair Debt Collection Practices Act ("FDCPA") by instituting a collection lawsuit against her despite lacking authorization from the putative client. (ECF No. 1). On December 4, 2020, this Court granted summary judgment to Plaintiff on her FDCPA claims, finding that Defendants made false, deceptive, or misleading representations, and engaged in unfair and unconscionable collection methods, in violation of 15 U.S.C. §§ 1692e and 1692f. (ECF No. 46). The Court incorporates by reference its factual recitation in the summary judgment Opinion.

The summary judgment ruling established Defendants' liability, leaving only damages at issue. Accordingly, the Court set a damages hearing for February 4, 2021. (ECF No. 47). After several continuances, Defendant O'Brien filed for bankruptcy, prompting this Court to enter an

automatic stay on July 7, 2021, under Section 362(a) of the Bankruptcy Act. (ECF No. 58). On November 30, 2021, Plaintiff moved to lift the stay, attaching an order from the Bankruptcy Court that authorized this case to proceed for a determination of Defendant O'Brien's liability. (ECF Nos. 59, 59-1). This Court granted the Motion and reset the damages hearing for February 10, 2022. (ECF No. 60).

Shortly before the scheduled hearing date, the parties filed a pair of notices on the docket. (ECF Nos. 63, 64). Together, they indicated that the parties had reached an agreement on the amount of Plaintiff's damages but had not executed a formal stipulation, in part because attorney's fees remained in dispute. The Court vacated the hearing and directed the parties to continue negotiating in good faith. (ECF No. 65). About two weeks later, Plaintiff reported that the formal stipulation remained unexecuted due to lingering disagreement over attorney's fees. (ECF No. 66). The Court held a status conference on March 15, 2022, and gave the parties another two weeks to execute a stipulation on damages only and to submit briefing on attorney's fees. (ECF Nos. 67, 68).

Late on March 29, Defendants filed their brief on attorney's fees. (ECF No. 69). Early on March 30, Plaintiff filed her Motion for Order on Agreed Damages. (ECF No. 70). In the Motion, Plaintiff represented that Defendants still had refused to sign the formal damages stipulation, precluding her from briefing attorney's fees. Defendants responded to the Motion that same day with a document titled "Defendants' Offer of Judgment." (ECF No. 71). Plaintiff later filed her Motion for Attorney Fees on April 5, 2022 (ECF No. 77), per a supplemental briefing schedule ordered by the Court. (ECF No. 76). The parties filed simultaneous reply briefs on April 12, 2022. (ECF Nos. 78, 79). These matters now stand ripe for adjudication.

## II.  LAW AND ANALYSIS

### A.  Damages

Despite the unusual posture of this case, there is no dispute that Plaintiff offered, and Defendants accepted, a damages stipulation of $5,000, consisting of $1,000 in statutory damages (*i.e.*, the FDCPA maximum) and $4,000 in actual damages. By email dated February 7, 2022, with a Court employee copied, Defendants' counsel stated: "We accept Ms. Woodard's demand of $5,000.00 and are willing to pay same [*sic*]. Ms. Woodard's claim for damages is resolved." (ECF No. 70-1, Ex. 1). The Court cancelled its scheduled damages hearing in reliance on that agreement. (*See* ECF No. 65). In the subsequent status conference on March 15, 2022, the parties again represented to the Court that the damages component was resolved, leaving only attorney's fees at issue.

Tellingly, Defendants also have not opposed Plaintiff's Motion for Order on Agreed Damages. The document filed as a response brief, captioned "Defendants' Offer of Judgment," confirms the $5,000 damages figure and the propriety of a judgment entry—but attempts to recast the agreement as a "settlement" conditioned upon a "release." (ECF No. 71 at 1). That addition finds no support in the parties' February 7 correspondence, nor in the Court's directive following the March 15 status conference "to execute a damages *stipulation* and file it with the Court." (ECF No. 68, emphasis added). Evidently, Defendants' counsel added the "release" after 6:00 p.m. on the deadline set by the Court, following weeks of silence. (ECF No. 70-1 ¶¶ 6–7 (decl. of Plaintiff's counsel Gregory Reichenbach)). The proposed release has little practical significance, given that a judgment entry would carry preclusive effect—as would the FDCPA's one-year statute of limitations, *see* 15 U.S.C. § 1692k(d). Defendants' late insistence on an inconsequential release appears to be a dilatory tactic, which the Court will not credit.

In any event, the filing was facially improper. Federal Rule of Civil Procedure 68 is "unambiguous— . . . [it] calls for filing of the offer only if the adverse party accepts it within ten days." *St. Paul Fire & Marine Ins. Co. v. City of Detroit*, 2007 WL 4126542, at *2 (E.D. Mich. Nov. 16, 2007) (quoting *Kason v. Amphenol Corp.*, 132 F.R.D. 197, 197 (N.D. Ill. 1997)); *see also* 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3002 (2d ed. 1997) ("The defendant should not file the offer with the court, but if that is done by mistake the remedy is to strike the offer from the court's file." (footnotes omitted)). Accordingly, the Clerk is directed to **STRIKE** Defendants' Offer of Judgment (ECF No. 71) from the docket.

The proper course here is to enforce the parties' February 7 stipulation, as reiterated multiple times to the Court, that Plaintiff's damages are $5,000. Therefore, Plaintiff's Motion for Order on Agreed Damages (ECF No. 70) is **GRANTED**. The Clerk will enter judgment for $5,000 in damages, consisting of $1,000 in statutory damages and $4,000 in actual damages.

### B. Attorney's Fees and Costs

Unlike the damages calculation, attorney's fees and costs are contested. Plaintiff moves for an award of $20,330.13 in fees and expenses. (ECF No. 77 at 1). Defendants ask the Court to "overrule" the fee request; in the alternative, they propose only $10,000. (ECF No. 78 at 8).

"The FDCPA mandates the award of 'a reasonable attorney's fee' and costs to a prevailing party." *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 446 (6th Cir. 2009) (citing 15 U.S.C. § 1692k(a)(3) and *Lee v. Thomas & Thomas*, 109 F.3d 302, 307 (6th Cir. 1997)). Plaintiff, by virtue of the summary judgment ruling and the "damages" portion of this Opinion, is now a prevailing party, entitled to recover her reasonable fees and costs. The remainder of this Opinion will consider whether Plaintiff's requested award is reasonable.

As explained in *Miller v. Ability Recovery Services, LLC*:

> The starting point for determining the amount of a reasonable attorney fee is the "lodestar" amount, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled. A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney. The prevailing market rate in the relevant community is a useful indication of what constitutes a reasonable rate. The "prevailing market rate" is defined as that rate which lawyers of comparable skill and experience can reasonably expect to command.

2019 WL 1227777, at *5 (S.D. Ohio Mar. 15, 2019) (internal quotation marks and citations omitted). Courts should award a fee "adequately compensatory to attract competent counsel," but should "avoid[] producing a windfall for lawyers." *Rembert v. A Plus Home Health Care Agency, LLC*, 986 F.3d 613, 616 (6th Cir. 2021) (FLSA fee-shifting) (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (civil rights fee-shifting)). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (civil rights fee-shifting).

Plaintiff's counsel has calculated his fees from a lodestar rate of $425 per hour. (ECF No. 77 at 4). He cites two reputable fee surveys—the 2017–2018 United States Consumer Law Attorney Fee Survey Report (attached as ECF No. 77-2) and the Ohio State Bar Association's publication, The Economics of Law Practice in Ohio in 2019 (attached as ECF No. 77-3). Those surveys place the average hourly rate for consumer law specialists in Ohio between $425 and $435 per hour.[1] The U.S. Consumer Law survey, in particular, has a history of favorable citations in

---

[1] Specifically, the U.S. Consumer Law survey estimates the average rate for a Columbus, Ohio consumer-law attorney with 16–20 years' experience at $425 per hour. (ECF No. 77-2 at 411). The Ohio State Bar survey estimates the median rate for consumer-law attorneys statewide at $435. (ECF No. 77-3 at 45).

Ohio's state and federal courts. (*See* ECF No. 77-2 at 522–24 (collecting cases)). The figure also aligns with recent fee awards obtained by Plaintiff's counsel. (ECF No. 77-1 ¶ 30 (Reichenbach decl.)).

Defendants counter with a rate of $250 per hour, which the Ohio State Bar survey reports as the overall, statewide median billing rate. (ECF No. 69 at 3–4; No. 69-1 at 44). Notably, this figure does not account for specialization and years of experience, and Defendants cite no authority for that exclusion. On the contrary, Sixth Circuit cases instruct the Court to look to "that rate which lawyers of *comparable skill and experience* can reasonably expect to command." *Dowling*, 320 F. App'x at 447 (emphasis added) (quoting *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). Defendants conflate this allowance for skill and experience with a "windfall," comparable to "the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region." (ECF No. 78 at 3–4, quoting *Rember*, 986 F.3d at 616; and *Ne. Ohio Coal. For the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016)). Yet, based on the surveys provided by Plaintiff's counsel, $425 is a typical rate for local consumer-law attorneys of comparable experience. A fee award in that amount is reasonable and would not generate a "windfall."[2]

From that lodestar rate, the Court may consider an upward or downward adjustment based on the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) (cited with approval by *Adcock-Ladd*, 227 F.3d at 349). Defendants do not argue for a downward adjustment (*see* ECF No. 69 at 5), and Plaintiff does not request an upward adjustment. (ECF No. 77 at 10). To the extent a *Johnson* analysis is required, "[a] highly important *Johnson* factor is the *result achieved.*" *Adcock-Ladd*, 227 F.3d at 349. Here, Plaintiff won the issue of

---

[2] For another comparison point, this Court recently awarded attorney's fees of $300 per hour in a different FDCPA case—to a younger attorney with a decade's less experience than Plaintiff's counsel. *See Cunningham v. Account Processing Grp., LLC*, 2022 WL 900618, at *6 (S.D. Ohio Mar. 28, 2022).

liability on summary judgment and achieved stipulated statutory damages equal to the FDCPA maximum. *See* 15 U.S.C. § 1692k(a)(2)(A). "Where a plaintiff has obtained excellent results, h[er] attorney should recover a fully compensatory fee." *Adcock-Ladd*, 227 F.3d at 349 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). Accordingly, the Court will not lower the lodestar rate.

Next, the hours multiplier must be reviewed to ensure that the effort expended on the client's behalf reasonably aligns with the demands of the case. "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Indus. Corp*., 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598 (2001). Here, Plaintiff's counsel is seeking compensation for 46.2 billed hours. (ECF No. 77 at 10). "In [his] discretion," counsel is not billing for 0.5 hours "spent briefing Defendants' motion to strike," nor for 1.3 hours "spent after March 25, 2022." (ECF No. 77-1 ¶ 26 (Reichenbach decl.)). Defendants counter with 42 hours, excluding the time billed after Defendants made their offer of $10,000 in attorney's fees. (ECF No. 78 at 2).

The Court has reviewed attorney Reichenbach's billing records and finds them to be appropriate. It also finds that 46.2 hours was a reasonable amount of time for Plaintiff's counsel to expend over the three-and-a-half years this case has been pending. In that span, the case proceeded through multiple contested motions, including a motion to dismiss, several motions to strike, and the aforementioned motion for summary judgment—all of which demanded time for legal research and drafting. The final 4.2 hours, which Defendants contest, were incurred mostly as a result of Defendants' refusal to execute a formal damages stipulation (despite having agreed to the amount, as noted above) and were reasonable in bringing this case to final judgment.

Therefore, the Court will use Plaintiff's requested hours multiplier of 46.2, for a total fee of $19,635.

Lastly, the FDCPA permits a prevailing plaintiff to recover "the costs of the action." 15 U.S.C. § 1692k(a)(3). Plaintiff seeks costs totaling $695.13, "which includes filing fees in this Court and the bankruptcy Court, postage, and a process server." (ECF No. 77 at 13). Defendant's brief does not address the costs calculation, but their $10,000 figure leaves no room for a cost recovery. On review, the Court concludes that the costs sought by Plaintiff are reasonable and should be awarded in full. *See Brown v. Halsted Fin. Servs., LLC*, 2013 WL 693168, at *3 (S.D. Ohio Feb. 26, 2013) (awarding filing fee as costs); *Thompson v. Rosenthal*, 2014 WL 7185313, at *5 (S.D. Ohio Dec. 16, 2014) (awarding service of process expenses as costs). Adding these costs to the attorney's fees calculated above, the total cost-shifting award is $20,330.13.

### III.   CONCLUSION

For the reasons thus stated, Plaintiff's Motion for Order on Agreed Damages (ECF No. 70) and Plaintiff's Motion for Attorney Fees (ECF No. 77) are **GRANTED**. The Clerk shall **STRIKE** Defendants' Offer of Judgment (ECF No. 71) and shall enter **JUDGMENT** for Plaintiff against the Defendants, jointly and severally, in the amount of **$25,330.13**, which includes $5,000 in damages and $20,330.13 in attorney's fees and costs. The Clerk shall transmit the judgment entry to the United States Bankruptcy Court for the Southern District of Ohio, Eastern Division, with reference to Case No. 2:21-bk-52297. This case is **CLOSED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: June 23, 2022**